**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Case No. 1:24-cr-00191-NYW

UNITED STATES OF AMERICA,

Plaintiff,

v.

JACOB SCHNEIDER,

Defendant.

---

# INFORMATION

---

The UNITED STATES ATTORNEY charges that:

**COUNT ONE**
**18 U.S.C. § 1343**

**General Allegations**

1. The United States Small Business Administration ("SBA") is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses.

2. On March 27, 2020, the President of the United States signed into law the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, which provided emergency assistance to small business owners suffering adverse economic effects caused by the Coronavirus ("COVID-19") pandemic. The CARES Act established several new temporary programs and expanded existing programs, including programs

created or administered by the SBA. Two sources of funding for small businesses were the Paycheck Protection Program ("PPP") and the Economic Injury Disaster Loans ("EIDL") program. The CARES Act mandated that only businesses in operation on February 15, 2020, for PPP, or before February 1, 2020, for EIDL, were eligible under the programs.

3. The EIDL program was an SBA program that provided low-interest financing to small businesses in regions affected by declared disasters. The CARES Act authorized the SBA to provide EIDLs to eligible small businesses experiencing substantial financial disruptions due to the COVID-19 pandemic.

4. Until April 2021, under the EIDL program, a small business could receive a loan from the SBA in an amount of up to six months of working capital with a maximum of $150,000. In order to obtain an EIDL, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees and the entity's gross business revenues and cost of goods sold in the twelve months prior to January 31, 2020. The amount of the loan, if approved, was determined in part based on the information provided concerning the gross revenue and cost of goods sold. EIDL funds were issued directly by the SBA and were permitted to be used for payroll expenses, sick leave, production costs, and certain business obligations, such as debts, rents, and mortgage payments.

5. The CARES Act further authorized the PPP program, which provided forgivable loans to small businesses. To obtain a PPP loan, a qualifying small business was required to submit a PPP loan application, signed by an authorized representative

of the business, in which the applicant acknowledged the program rules and made certain affirmative certifications. The applicant was also required to state the business's: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the loan amount that the business was eligible to receive under the PPP. Businesses were also required to provide documentation showing their payroll expenses, such as filed federal income tax documents.

6. PPP loan applications were received and processed, in the first instance, by a participating lender. If a PPP loan application was approved, the participating lender funded the loan using its own monies, but the loans were guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan. The SBA paid participating lenders a processing fee for each funded PPP loan.

7. The proceeds of a PPP loan could be used for certain specified items, such as payroll costs, mortgage interest payments, and utilities. The proceeds of a PPP loan were not permitted to be used by the borrowers to purchase consumer goods, automobiles, real estate, or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

8. Small businesses could request forgiveness of up to the full amount of the PPP loan by filing a forgiveness application with the same lender. The forgiveness application required the business to certify, among other things, that the loan was used for eligible payroll and other business costs, and that the business had verified the

eligible payroll and nonpayroll costs for which the business requested forgiveness. The business also was required to submit documentation to the lender verifying payroll costs.

**Individuals and Entities**

9. At all times relevant to the Information,

a. JACOB SCHNEIDER ("SCHNEIDER") was a purported owner of Piddonkadonk, LLC; and

b. LENDER 1 was an approved SBA-lender of PPP loans located in New Jersey.

**The Scheme to Defraud**

10. Beginning in or around June 2020 and continuing through at least in or around March 2021, in the State and District of Colorado and elsewhere, defendant JACOB SCHNEIDER devised and intended to devise a scheme to defraud and to obtain money and property from the United States and a participating lender by means of materially false and fraudulent pretenses, representations and promises (hereinafter referred to as the "Scheme"). The Scheme was executed in connection with seeking loans under the PPP and EIDL programs as authorized by the CARES Act by submitting false and fraudulent EIDL and PPP loan applications on behalf of business entities that SCHNEIDER purportedly operated.

**Manner and Means of the Scheme**

It was part of the Scheme that:

11. In or around February 2021, SCHNEIDER prepared and submitted a

fraudulent PPP application on behalf of Piddonkadonk, LLC to LENDER 1. This PPP application contained a number of materially false and fraudulent certifications and representations regarding, *inter alia*, the business's average monthly payroll and number of employees. SCHNEIDER further falsely represented that all PPP funds would be used to pay eligible business expenses, when, in fact, the bulk of the proceeds were used for his personal benefit. SCHNEIDER also submitted false and fraudulent documentation in support of the PPP application to LENDER 1. As a result of the Scheme, SCHNEIDER obtained PPP funds totaling $530,567.

12. From in or around June 2020 through at least September 2020, SCHNEIDER also prepared and submitted fraudulent EIDL applications to the SBA on behalf of Piddonkadonk, LLC and a sole proprietorship in his own name. In these EIDL applications, SCHNEIDER made materially false statements regarding, *inter alia*, the entities' gross revenues, and costs of goods sold. These loans were declined or rejected prior to funding.

**<u>Execution of the Scheme</u>**

13. For the purpose of executing the Scheme described in paragraphs 10–12 above, defendant SCHNEIDER caused to be transmitted by means of wire communication in interstate commerce the following signals and sounds: on or about March 4, 2021, the SBA in Denver, Colorado created and certified the processing fee payment file for the PPP loan pertaining to Piddonkadonk, LLC and transmitted it via interstate wire communications from Colorado to the U.S. Treasury processing site located in the Kansas City Regional Operations Center in Kansas City, Missouri. After a

computer operator at the U.S. Treasury disbursing office in Kansas City, Missouri performed payment operations to complete the processing of the file, an Automated Clearing House (ACH) payment file was transmitted to the Federal Reserve Bank ACH processing site in New Jersey. The Federal Reserve Bank in New Jersey processed the payment file and sent $15,917.01 to Lender 1.

All in violation of Title 18, United States Code, Section 1343.

**FORFEITURE ALLEGATION**

14. The allegations contained in Count One of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. §§ 981(a)(1)(C) and 28 U.S.C. § 2461(c).

15. Upon conviction of the violation alleged in Count One of this Information involving a violation of 18 U.S.C. § 1343, defendant JACOB SCHNEIDER shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c) any and all of the defendant's right, title and interest in all property constituting and derived from any proceeds the defendant obtained directly and indirectly as a result of such offense, including, but not limited to the entry of a money judgment in the amount of proceeds obtained by the scheme and by the defendant.

16. If any of the property described above, as a result of any act or omission of the defendant:

a) cannot be located upon the exercise of due diligence;

b) has been transferred or sold to, or deposited with, a third party;

c) has been placed beyond the jurisdiction of the Court;

d) has been substantially diminished in value; or

e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

COLE FINEGAN
UNITED STATES ATTORNEY

s/ Nicole C. Cassidy
By: Nicole C. Cassidy
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Phone: (303) 454-0100
Fax: (303) 454-0402
nicole.cassidy@usdoj.gov